(42 App. Div. 555.)

## DUDLEY v. BROADWAY INS. CO. OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, Fourth Department. July 18, 1899.)

1. TRIAL—DISCRETION OF LOWER COURT—SERVING AMENDED ANSWER.

Where the answer in an action on certain insurance policies had been served eight months before the motion to amend, and the attorney might have fully ascertained all the facts necessary to the proposed amendment long before the application was made, and nothing was done until the parties had assembled for the trial upon a day agreed upon, the action of the court in refusing to allow the amendment is not an abuse of discretion.

2. JUDGMENTS—OPENING DEFAULT—GROUNDS.

Where defendant's attorney, after the court rightly refused to allow an amended answer to be served, deliberately withdrew after consultation with his clients, and allowed judgment to go by default, an order of the trial court denying a motion to open default will not be reversed.

Appeal from trial term, Erie county.

Action by Homer E. Dudley against the Broadway Insurance Company of the city of New York on policies of fire insurance. From an order denying defendant's motion to amend its answer, and from an order denying defendant's motion to open default, defendant appeals. Affirmed.

This is one of the several actions brought upon the policies of fire insurance issued by various companies and Lloyd's associations insuring against loss or damage by fire the stock of goods and merchandise owned by the John Eaton Company, Limited, a corporation owning and conducting a department store at Toronto, Canada. On May 20, 1897, the store occupied by the company, together with nearly its entire contents, was destroyed by fire. The insurance carried by the company at the time of the fire amounted to $219,540, of which about $60,000 was in Canadian companies, $50,000 in English companies, and $109,000 in American companies. Shortly after the fire, the representatives of the Canadian companies met, and appointed an experienced adjuster, by the name of Edwards, to adjust the loss on their behalf; and he, in connection with another man of like experience, by the name of Howley, who represented the defendant as well as other American companies and Lloyd's associations, made a thorough investigation of the origin of the fire and of the loss which resulted therefrom. On the 22d day of May, 1897,—two days after the fire,—all the policies were assigned by the John Eaton Company, Limited, to the Bank of Toronto, and thereafter the policy in suit, as well as those issued by certain other companies, was assigned by the bank to the plaintiff, Homer E. Dudley. On the 2d day of June, 1897, the proofs of loss were made, and sent to the various companies. A copy was also furnished to both Mr. Edwards and Mr. Howley, and at their request all books and papers of the John Eaton Company, Limited, which were then in existence, were submitted to them for their examination. After spending nearly two months investigating the loss, the adjusters above named denied any liability upon the part of their companies, and refused to make an adjustment; whereupon suits were commenced in Canada against such companies and Lloyd's associations as could be served with process there, and in the latter part of March, 1898, this action, together with eight others, was commenced in the supreme court of this state. The answer herein was served on the 14th day of May, 1898, and the case was upon the calendar of the May, September, and November trial terms of that year held in Erie county. Prior to the last-mentioned term it was arranged between counsel that all the cases should be tried together before Mr. Justice Childs without a jury, at such time early in the month of December following as the learned justice might name. Later on, December 12th was designated as the day for the trial to commence, at which time the plaintiff was ready to proceed therewith, but a postponement became necessary on account of the illness of a son of the defendant's attorney. The term was thereupon continued for the

express purpose of trying these cases, and, after some correspondence between counsel, January 23, 1899, was agreed upon as the time for the trial. On the last-named day it was found that the plaintiff's counsel was engaged at the court of appeals, and the term was continued for his accommodation until the 25th day of January. In the meantime the defendant's attorney, who resided in the city of New York, had become engaged in another important trial, and the cases were turned over to local counsel. On the 25th day of January, 1899, the parties finally met in court, the plaintiff being ready and anxious for the trial to proceed. The defendant thereupon asked permission to amend its answer, and submitted the proposed amendment thereto, which covers nearly 12 pages of printed record. It was then agreed by counsel that the motion for leave to amend might be made then and there, with the same force and effect as though made at special term. The court assenting to this arrangement, argument was had, and the application was denied. The counsel for the defendant thereupon withdrew from the cases, and suffered judgments to be taken by default. The order denying the motion to amend provided that each counsel might file an affidavit setting forth the grounds upon which the motion was made and opposed, and that such affidavits, together with the pleadings and proposed amendment, should be regarded as the papers upon which the order was made. Subsequently, upon the same papers and several additional affidavits, a motion was made by the defendant at special term to open the default, which motion was denied, and from the order denying the same, as well as from the order denying the motion for leave to amend, an appeal was duly taken.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and NASH, JJ.

Adelbert Moot, for appellant.
John G. Milburn, for respondent.

ADAMS, J. The voluminous records filed in this court and the elaborate briefs submitted by counsel would seem to indicate that the questions which they present for our consideration are exceeding complex in their nature. Important—and vastly important—to both parties the questions doubtless are, but, upon a careful perusal of the various affidavits and of the exhibits therein referred to, that which before appeared involved and intricate becomes exceedingly simple, and virtually resolves itself into this single inquiry: Did the trial court, in denying the defendant's motion for leave to amend its answer, so exercise its discretionary power as to justify this court in declaring that the same had been abused? In answering this inquiry we do not deem it necessary to determine whether or not the proposed amendment, if allowed, would have enabled the defendant to avail itself of a new and substantial defense, and one which, if established, would be likely to defeat a recovery by the plaintiff; for, unless a proposed pleading is obviously bad or frivolous, its sufficiency will not be determined upon an application for leave to serve the same, but the other party will be left to his remedy by demurrer or motion at the trial. Campbell v. Campbell (Sup.) 5 N. Y. Supp. 171; Paddock v. Barnett, 88 Hun, 381, 34 N. Y. Supp. 834. Assuming, then, for the purposes of this review, that the proposed amendment tendered new and meritorious issues, what were the circumstances under which leave to serve the same was denied? As has already been stated, issue was first joined herein by the service of the defendant's original answer on the 14th day of May, 1898, more than eight months prior to the time when the motion to amend was made. This

answer was drawn by an attorney of conceded ability, and one whose large experience in the conduct of insurance cases certainly qualified him to draw such a pleading intelligently and skillfully. At that time one of the Canadian cases had been tried, and upon the trial the transactions upon which the defenses set forth in the proposed amendment are predicated were gone into at length, and with great detail. They were also critically and elaborately considered in the opinion of the learned judge before whom the case was tried, and a copy of that opinion had been furnished to, and was then in the possession of, the defendant's representative who was charged with the duty of preparing this case for trial. In October, 1898, the same matter was considered and passed upon before Sir W. R. Meredith, C. J., in another hearing in a Canadian court, so that, long before the application to amend was made, the defendant's attorney was or might have been fully possessed of all the facts and circumstances which were necessary to enable him to formulate the proposed amendment, and yet no sign was made that any amendment was deemed necessary until the parties and their witnesses had assembled for the trial upon a day fixed by mutual conference and consent to accommodate both court and counsel. It is urged, however, that the defenses which proved unavailable in the Canadian courts may be interposed with greater assurance of success in this action by reason of the fact that the provision of the policy issued by the defendant, relating to the material changes in the risk assumed, is different, and more favorable to the defendant's contention than the provision contained in the Canadian policies, which fact was not discovered until after the case had been placed in charge of the present counsel. But, conceding this to be true, does it furnish an adequate excuse for the defendant's laches? The attorney of record, as has been suggested, had had large experience in matters of this character, and he certainly ought to have discovered every defense which was available to the defendant before allowing the case to leave his hands, as he probably would have done had he displayed the same zeal and effort as did the present learned counsel, who was not retained in the case until about a week before the application for leave to amend was made. A labored attempt was made to excuse this oversight or omission upon the part of the attorney, and to that end various explanations were tendered, which, while they did not exonerate him from the charge of laches, might, under different circumstances, have been regarded as sufficient to warrant the granting, upon proper terms, of the relief sought. But, when the application for leave to amend was made, the plaintiff was in readiness for trial, and had at considerable trouble and expense subpœnaed a large number of witnesses to be present at a time which had been set apart by the court for the express purpose of trying these cases. Under these circumstances it is not surprising that the defendant's application was not regarded with more favor by the learned trial judge. We have said that the defendant's laches under different circumstances might have been condoned, and it is quite possible that an appellate court might think it would have been better, even under existing conditions, to have exhibited more lenity; but the learned trial jus-

tice was in a position, by reason of his familiarity with all the surrounding facts and circumstances, to determine that question intelligently and discriminatingly, and, as such determination rested almost entirely in his discretion, and as we are unable to say that in this instance there was any abuse of that discretion, we do not feel at liberty to reverse the order appealed from. Sayre v. Frazer, 47 Barb. 26; Dennis v. Snell, 54 Barb. 411; Lanphere v. Clark (Sup.) 29 N. Y. Supp. 107; O'Neil v. Hester, 82 Hun, 432, 31 N. Y. Supp. 510.

As regards the second order, but little need be said. When the motion to amend was denied, the defendant's counsel was at liberty to pursue either of two remedies: He might have excepted to the decision of the learned trial justice, proceeded with the trial, and, if defeated, availed himself of his exception upon appeal; or he might have abandoned the cases, and suffered defaults to be taken. This latter alternative he saw fit to adopt, and, later on, having become convinced that his course was unwise, he made application to be relieved from the consequences of his "mistake." The papers upon which this second order was based are obviously designed as a supplement to those used upon the former motion, and they do contain some additional statements which are relied upon to excuse the defendant's laches; but these statements simply show that the attorney of record was not aware of the existence of certain facts which the present counsel discovered as soon as the case was committed to his charge. They fail, however, to show that any very diligent effort was made by the attorney to inform himself as to the real situation of affairs, and consequently the case, so far as this feature of it is concerned, was virtually the same upon the second as upon the first application. The only question, therefore, left to be determined was whether the judgments which were allowed to go by default should be vacated. To this proposition the special term, in the exercise of its discretion, responded in the negative, and with such response we are indisposed to interfere. The determination to abandon the cases was made deliberately by an able, experienced, and astute officer of this court, after consultation with his clients or their trusted representatives; and, having thus made his election, it would be a travesty of justice to permit him to reconsider his action after the plaintiff had made his proofs and dismissed his witnesses. Each of the orders appealed from should be affirmed, with $10 costs and disbursements.

Order denying motion to amend answer affirmed, with $10 costs and disbursements. Order denying motion to open default affirmed, with $10 costs and disbursements. All concur, except HARDIN, P. J., not voting.